**Helen A. COHEN, Plaintiff,**

v.

**ILLINOIS INSTITUTE OF TECHNOLOGY, an Illinois not-for-profit corporation, et al., Defendants.**

**No. 74 C 1374.**

United States District Court,
N. D. Illinois, E. D.

Oct. 29, 1974.

Gerald Rose, Chicago, Ill., for plaintiff.

E. Allen Kovar, Christopher B. Nelson, Schiff, Hardin & Waite, Chicago, Ill., for defendants.

## DECISION

McMILLEN, District Judge.

Defendants have filed a motion to dismiss the complaint for failure to state a claim. The complaint alleges in substance that the plaintiff was deprived of tenure and pay as an associate professor because of her sex, in violation of her rights under the Fourteenth Amendment to the Constitution of the United States. The complaint is in three counts, Count I for damages and other relief under 42 U.S.C. § 1983, Count II for damages and other relief under 42 U.S.C. § 1985(3), and Count III as a pendent claim for damages and other relief under the Illi-

nois Constitution of 1970. We find and conclude that the defendants' motion should be granted.

 The complaint does not allege the equivalent of state action within the meaning of § 1983, as applied in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Plaintiff alleges that the following circumstances in effect make I.I. T. the *alter ego* of the State of Illinois (par. 8 of the Complaint):

(a) I.I.T. is organized under an Illinois statute which directs the Superintendent of Public Instruction to issue and revoke its certificate to operate in the State.

No doubt this same regulatory duty is required of the Superintendent with respect to all private educational institutions in Illinois, but it does not follow from this that such institutions are thereafter engaging in state actions in everything which they do.

Furthermore, in this particular case, the several requirements allegedly imposed by the Superintendent of Public Instruction as a condition for a certificate do not concern the hiring or tenure of teachers. Therefore it cannot be said that the State of Illinois controls or is responsible for the actions of I.I.T. toward the plaintiff within the meaning of Burton v. Wilmington Parking Authority, supra.

(b) By its name, the Institute implies that it is part of the University system of the State of Illinois. This alleged implication certainly does not make I.I.T. an agency of the State.

(c) The Superintendent of Public Instruction has delegated the accreditation of curricula and faculties to the North Central Association of Colleges and Secondary Schools, which thereupon accredits I.I.T. This allegation adds nothing to support subparagraph (a), above, except possibly to raise the question of the lack of a necessary party.

(d) I.I.T. (not the State of Illinois) requires a State of Illinois Teacher's

Certificate in order for a student to participate in certain of its academic programs.

(e) The State of Illinois "controls" certain undergraduate programs at I.I.T., including some in plaintiff's department, as a condition for training and certifying secondary school teachers.

(f) The State of Illinois "controls" certain other programs at I.I.T. which lead to a degree of Bachelor of Science.

(g) The State of Illinois (and the City of Chicago) control certain undergraduate programs for training and certification of secondary school teachers.

(h) Graduate students at I.I.T. participate in mental health internships with various state agencies of the State of Illinois as part of their academic training.

(i) I.I.T. conducts seminars in cooperation with the State of Illinois (although this is not alleged to involve the plaintiff's department).

(j) At least one program at I.I.T. is established to conform to the requirements of psychological internship in the public schools of Illinois in order to meet the State requirements for certification as a school psychologist.

(k) Certain courses at I.I.T. conform to the entrance requirements of some of the graduate schools of the University of Illinois.

(l) I.I.T. conducts programs for the State of Illinois' certified teachers.

(m) I.I.T. administers the State Scholarship Program and other State financial aids to students.

(n) I.I.T. "solicits" the power of eminent domain for the acquisition of real property.

We assume that plaintiff could prove all of these allegations. It is obvious from the foregoing summarization that I.I.T. cooperates with the State of Illinois and is dependent upon its approval in many respects. This does not make it a State institution or agency with respect to the tenure and salary of its academic staff, however. In fact, plaintiff does not allege State involvement in any of the personnel practices complained of. In Moose Lodge No. 107 v. Irvis, 407 U. S. 163 at p. 173, 92 S.Ct. 1965, at p. 1971, 32 L.Ed.2d 627 (1972), the court said:

> The Court has never held . . . that discrimination by an otherwise private entity would be violative of the Equal Protection Clause if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever. Since state-furnished services included such necessities of life as electricity, water, and police and fire protection, such a holding would utterly emasculate the distinction between private as distinguished from state conduct set forth in The Civil Rights Cases . . . ., and adhered to in subsequent decisions. Our holdings indicate that where the impetus for the discrimination is private, the State must have "significantly involved itself with invidious discriminations," Reitman v. Mulkey, 387 U.S. 369, 380 [87 S.Ct. 1627, 18 L.Ed.2d 830] (1967), in order for the discriminatory action to fall within the ambit of the constitutional prohibition.

The Seventh Circuit has taken an equally restrictive view of this jurisdictional limit of § 1983 in Doe v. Bellin Memorial Hospital, 479 F.2d 756 (7th Cir. 1973).

A case similar to the one at bar is Furumoto et al. v. Lyman et al., 362 F. Supp. 1267 (N.D.Cal., 1973). In dismissing the § 1983 complaint against the president of Stanford University and others, the court summarized its reasons at pages 1278–1279, as follows:

> A finding of general state action here would require more than an accumulation of the state benefits or regulations cited by plaintiffs. These factors do not establish state control or

the inherently governmental nature of the university. Plaintiffs have not demonstrated that Stanford is controlled by the State of California or that Stanford does not have a substantial sphere of private, independent authority and initiative. The State's grant to Stanford of corporate powers and privileges is not evidence of State control. The State has thus merely given Stanford substantially the same corporate powers and privileges given to any corporation formed under its laws . . . . Nor can plaintiffs find support in the power granted Stanford by legislation to charge tuition to California residents. California Educational Code § 30021. . . . The tax exemptions granted to Stanford extend also to many other nonprofit-making institutions . . . . These exemptions and the power of eminent domain are indeed benefits accorded Stanford by the State, but the legislature is thereby promoting what it views to be the public interest in the existence of *private* educational institutions. Even if the State directly subsidized the University, this financial aid would not necessitate a finding of State control.

■ With the corporate defendant out of the case, the allegations of Count I against the individual defendants amount to nothing more than that they "knew or should of known" of certain allegedly discriminatory acts against the plaintiff. The individual defendants were officers or directors of the corporate defendant but are not alleged to have controlled it or to have personally committed acts of discrimination, except in conclusory and vague terms (pars. 13, 14 and 15 of the complaint). Allegations of this sort are not deemed to be true for the purpose of this motion, and the plaintiff must point her finger more directly toward the individuals responsible for the acts of alleged discrimination before she can require them to defend. Cf. Adams v. Pate, 445 F.2d 105 (7th Cir. 1971).

■ Count II must fall for much the same reason. Under the controlling decision of Dombrowski v. Dowling, 459 F.2d 190 (7th Cir. 1972) the court held that § 1985(3) requires (a) "state action" and (b) a conspiracy by two or more separate individuals, as distinguished from the "collective judgment of two or more executives of the same firm" (459 F.2d at p. 196). The allegations of Count II fail to satisfy both of these requirements. Not only is the element of state involvement lacking, as discussed above under Count I, but also the challenged conduct is essentially the act of a single entity.

■ Count III, being pendent, must fall with the other two. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ We are well aware of the general policy of the Federal courts not to dismiss a complaint if the plaintiff could possibly prove some set of facts under the pleadings which would entitle her to relief. Burns v. Paddock, 503 F.2d 18 (7th Cir. 1974). However, she must first allege these facts or at least a' foundation for proving them and not rely upon the Court or the defendants to speculate concerning what she might be able to prove. She has a right to try to allege a cause of action by amendment, but the facts and conclusions which she has chosen as a basis for her present complaint are insufficient to put any of the defendants to a trial.

It is therefore ordered, adjudged and decreed that the motion of the defendants to dismiss the complaint is granted.