Barbara GIRARD, Plaintiff,

v.

94TH STREET AND FIFTH AVENUE
CORPORATION et al., Defendants.

No. 75 Civ. 646.

United States District Court,
S. D. New York.

June 30, 1975.

Ballon, Stoll & Itzler, New York City, for plaintiff; Kenneth S. Knigin, and Howard D. Ressler, New York City, of counsel.

Shea, Gould, Climenko, Kramer & Casey, New York City, for defendants; Martin I. Shelton, and James H. Schuyler, New York City, of counsel.

## OPINION

WARD, District Judge.

Defendants, 94th Street and Fifth Avenue Corporation ("the corporation") and the members of its board of directors, individually, move to dismiss the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on ground of *res judicata*. Since matters outside the pleadings have been presented to and not excluded by the Court, the Rule 12(b)(6) motion will be treated as one for summary judgment.

In 1968, during their marriage, plaintiff's former husband purchased shares of capital stock of the corporation and

became owner, for the term beginning January 15, 1968 and ending May 31, 1981, of the proprietary lease to the fourth floor of 1125 Fifth Avenue, New York. Thereafter, plaintiff and her husband entered into a separation agreement by which the latter assigned to plaintiff his right, title and interest in the capital stock and proprietary lease, and vacated the premises. The corporation was subsequently notified of the assignment. Plaintiff requested that she be recognized as the owner of the stock and as the lawful tenant of the premises. The board of directors, giving no reason, refused to consent to the assignment of the lease and rejected the demand by plaintiff to transfer the stock on its books to her.

Plaintiff commenced an action against the corporation in the Supreme Court of the State of New York, County of New York seeking a declaratory judgment that the corporation's refusal was arbitrary, capricious and unreasonable, and a court order compelling it to transfer the stock on its books to her and to consent to the assignment of the proprietary lease. The corporation moved for summary judgment, which was granted. The Court held that by the terms of the proprietary lease the corporation had the right to refuse to consent to the transfer of the lease to plaintiff for any reason it deemed satisfactory except, as the Court noted parenthetically, for reasons prohibited by civil rights laws. The Appellate Division, First Department, affirmed the order and judgment. Plaintiff's motion for leave to appeal to the Court of Appeals was denied.

Claiming that her requested ownership transfer was rejected for reasons prohibited by the Fourteenth Amendment and the civil rights laws derived therefrom, plaintiff instituted her present action in federal court. She alleges that defendants have violated 42 U.S.C. § 1983,[1] by refusing to consent to the requested assignment solely because she is female. She also alleges under 42 U.S.C. § 1985(3)[2] that defendants have conspired to deprive her of her procedural due process rights by refusing to provide her an opportunity to be heard at any discussion pertaining to her interests by the board of directors of the corporation, and have conspired to deprive her of substantial property rights in the subject premises solely because she is a female. In addition, she alleges violation of the New York Human

1. 42 U.S.C. § 1983 reads:

§ 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. 42 U.S.C. § 1985(3) reads:

Depriving persons of rights or privileges
(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Rights Law, New York Executive Law § 296(5)(a)(1) (1972).[3] Plaintiff seeks judgment directing that the corporation and the members of its board of directors recognize her as the lawful owner of the shares of stock and proprietary lease in the premises, and enjoining them from interfering with her peaceful possession of the premises.

Defendants contend that plaintiff has failed to state an adequate federal cause of action. Specifically, they argue that her § 1983 claim must be dismissed for failure to set forth facts showing any deprivation under color of state law of any right, privilege or immunity and that her § 1985(3) claim must be dismissed for failure to establish a conspiracy cognizable under the statute. Alternatively, defendants contend, if plaintiff states a sufficient claim for relief on either ground, the doctrine of *res judicata* precludes their assertion here since she has already litigated this controversy in state court, where she had full opportunity to assert all claims.

■■■ 28 U.S.C. § 1331(a) gives this Court jurisdiction to hear the federal questions raised in plaintiff's complaint since the enforcement of rights arising under the Constitution and laws of the United States is basic to the relief she seeks and the claims she alleges are neither insubstantial nor frivolous. *Bell* v. *Hood,* 327 U.S. 678, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1945) ; *Moore* v. *Central R. Co. of New Jersey,* 185 F.2d 369, 371 (2d Cir. 1950). Jurisdiction is not defeated by the possibility that the complaint might fail to state a cause of action. That question must be decided after, and not before, the Court assumes jurisdiction. *Bell* v. *Hood, supra* 327 U.S. at 682, 66 S.Ct. 773; *Olson* v. *Board*

*of Education of Union Free School District, Malverne, N. Y.,* 250 F.Supp. 1000, 1004 (E.D.N.Y.1966).

■■ To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show (1) a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) causation of such deprivation by a person acting under color of state law. "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *United States* v. *Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966) (citing cases). An action, especially under the Civil Rights Act, should not be dismissed at the pleading stage unless it appears to a certainty that plaintiff is entitled to no relief under any set of facts which could be proved in support of her claim, *Escalera* v. *New York City Housing Authority,* 425 F.2d 853, 857 (2d Cir. 1970). Nevertheless, plaintiff's § 1983 claim must be dismissed for failure to allege facts sufficient to support a finding of "state action."

Citing *Shelley* v. *Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), plaintiff argues that the requisite state action is present to support her § 1983 claim because the courts of the State of New York have ratified and enforced the provision in the proprietary lease vesting the board of directors with near absolute authority to reject requested ownership transfers. While *Shelley* v. *Kraemer* does establish that judicial enforcement of a private discriminatory contract may constitute state action for purposes of the Fourteenth Amendment, giving rise to a claim under civil rights

---

3. New York Human Rights Law, New York Executive Law § 296(5) (a) (1) reads :

5. (a) It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof:

(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the race, creed, color, national origin or sex of such person or persons.

laws, the state judicial action involved in *Shelley* is clearly distinguishable from that presented here. In *Shelley,* discriminatory purposes of a racially restrictive covenant were secured only by reason of the state court's imprimatur. The state had thus provided "the full coercive power of government to deny to petitioners, on the grounds of race or color, the enjoyment of property rights in premises which petitioners [were] willing and financially able to acquire and which the grantors [were] willing to sell. The difference between judicial enforcement and nonenforcement of the restrictive covenants [was] the difference between being denied rights of property available to other members of the community and being awarded full enjoyment of those rights on an equal footing." 334 U.S. at 19, 68 S.Ct. at 845. However, the Court noted, "the restrictive agreements standing alone cannot be regarded as violative of any right guaranteed to petitioners by the Fourteenth Amendment . . . That Amendment erects no shield against merely private conduct, however, discriminatory or wrongful." 334 U.S. at 13, 68 S.Ct. at 842.

In the instant case there is no restrictive covenant contained in the proprietary lease which expressly prohibits transfers of ownership on the basis of sex. The lease merely provides that no assignment by a lessee shall be effective against the lessor without its prior consent. The Supreme Court of the State of New York upheld the validity of this provision and acknowledged the broad power of the board of directors to refuse to consent to requested assignments for any reason deemed satisfactory to it except those prohibited by civil rights laws. Even if the board's refusal was motivated by a constitutionally impermissible purpose, any deprivation suffered by plaintiff as a consequence was completed prior to the state court proceedings. Unlike in *Shelley,* the action by the state court here did not effectuate a discriminatory purpose which could not have been secured but for its decision.

Finding plaintiff's reliance on *Shelley v. Kraemer* misplaced, this Court must determine whether plaintiff has alleged facts sufficient to establish the necessary "state action" to support her § 1983 claim. Plaintiff argues no other nexus between the state and defendants' allegedly discriminatory conduct but the state court's decision.

In order to subject conduct that is formally private to the limitations of § 1983 and the constitutional amendments, it must be shown (1) that the degree of state involvement with the private institution is "significant," (2) that the state's involvement is with the activity that caused the injury (the nexus requirement), and (3) that the state's involvement aids, encourages or connotes approval of the complained of activity. *Moose Lodge No. 107* v. *Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1971); *Barrett* v. *United Hospital,* 376 F.Supp. 791, 797 (S.D.N.Y.1974); *see also, Jackson* v. *Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1975). However, our circuit recognizes a double "state action" standard: "A less onerous test for cases involving racial discrimination, and a more rigorous standard for other claims." *Barrett* v. *United Hospital, supra* at 797; *Jackson* v. *The Statler Foundation,* 496 F.2d 623, 628–29 (2d Cir. 1974) (citing cases). The *Barrett* court noted that the rationale behind the exception for cases involving racial discrimination may make it equally applicable to cases involving sex or age discrimination. 376 F.Supp. 797 n. 26.

Since plaintiff bases her § 1983 claim on alleged sex discrimination, this Court will depart from the three-pronged state action test and more closely scrutinize the state court's involvement to determine whether the alleged discrimination by defendants was impregnated with governmental approval. Under this stricter standard, "indirect governmen-

tal participation in the management of an organization is persuasive evidence of the existence of 'state action' where the participation is both substantial and other than neutral." *Jackson* v. *The Statler Foundation*, 496 F.2d 623, 635 (2d Cir. 1974). Upon review of the evidence presented, it cannot be said that the action of the state court here was either "substantial" or "other than neutral." The state has merely provided a forum to determine the rights of the parties; it has no interest whatever in the outcome of the private litigation. *See, Stevens* v. *Frick*, 372 F.2d 378, 381 (2d Cir. 1967) (citing cases). The purported discrimination was not secured only by reason of the state court's decision. *Cf., Shelley* v. *Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). To say that an open courthouse door constitutes "state action" is to demean the judicial process. Such a conclusion would provide future litigants an opportunity to raise a § 1983 claim, based on conclusory allegations of discrimination, every time a state court construed a contractual provision, nondiscriminatory on its face, against the litigant's interests. Accordingly, plaintiff's § 1983 claim is dismissed for failure to establish the requisite element of "state action."

██ Defendants next challenge the sufficiency of plaintiff's § 1985(3) claim. In *Griffin* v. *Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970), the Supreme Court set the framework for an adequate complaint under § 1985(3). A complaint must allege (1) a conspiracy between two or more persons for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law, and (2) an act by one of the conspirators in furtherance of the object of the conspiracy whereby another person was (a) injured, or (b) deprived of exercising any right or privilege of a citizen of the United States.

██ Existence of a conspiracy under § 1985(3) presents a question of fact. *Crawford* v. *City of Houston, Texas*, 386 F.Supp. 187, 192 (S.D.Texas 1974). Viewing the complaint in a light most favorable to plaintiff, and accepting the facts alleged as true, 2A Moore's Federal Practice ¶ 12.08 (2d ed. 1974), the Court nevertheless finds that plaintiff has failed to allege facts sufficient to constitute a conspiracy within the meaning of § 1985(3) and, therefore, her § 1985(3) claim must be dismissed.

The conduct challenged by plaintiff's § 1985(3) claim is the action of the individual defendants rejecting her requested ownership transfer taken while acting in their official capacity as directors of the corporation, which she alleges constitutes a conspiracy to deprive her of her civil rights and substantial property rights solely because she is female.

The lease agreement in controversy stipulates that the directors must consent to all proposed assignments of ownership before they are effective against the lessor. While plaintiff specifically states that the board of directors controls the corporation, she never alleges that the directors acted outside their official capacity in reaching their purported discriminatory decision. Plaintiff, thus, seeks to extend § 1985(3) to discriminatory business decisions participated in by members of one business entity. *Cf., Baker* v. *Stuart Broadcasting Company*, 505 F.2d 181 (8th Cir. 1974). In dealing with this precise issue, the Seventh Circuit in *Dombrowski* v. *Dowling*, 459 F.2d 190, 196 (7th Cir. 1972) stated:

> . . . If the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute the conspiracy contemplated by this statute.

Here, the cooperative corporation established the medium, its board of directors, through which it acted in ratifying assignments of ownership. Although the decision plaintiff challenges reflect-

ed the collective judgment of "two or more persons," the decision cannot be considered the product of a conspiracy when the board was merely carrying out the corporation's managerial policy. Following the rule stated in *Nelson Radio & Supply Co.* v. *Motorola,* 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953), when acting in an official capacity, "the acts of the agent are the acts of the corporation . . . A corporation cannot conspire with itself anymore than a private individual can." *See also, Cole* v. *University of Hartford,* 391 F.Supp. 888 (D.Conn.1975). That these individuals are, coincidentally, shareholders, tenants and occupants of apartments in the building owned by the defendant corporation, is irrelevant to this Court's determination of a § 1985(3) conspiracy, for plaintiff has not alleged that these directors were actuated by any independent personal stake in achieving the corporation's purported illegal objective. *See, Cohen* v. *Illinois Institute of Technology,* 384 F.Supp. 202, 205 (N.D.Ill.1974). Accordingly, plaintiff's § 1985(3) claim is dismissed for failure to allege a conspiracy cognizable under the statute.

 Having concluded that plaintiff's federal claims must be dismissed for failure to state a cause of action, this Court, in its discretion, will also dismiss her pendent state claim. Plaintiff will suffer minimal inconvenience by the dismissal of her state claim at a point early in the course of this litigation. Following the Supreme Court's ruling in *United Mine Workers* v. *Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966),

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional

sense, the state claims must be dismissed as well.

This Court's determination that plaintiff's federal claims are inadequate is expressly limited to the finding that she has failed to establish the necessary "state action" required by § 1983 or an actionable conspiracy required by § 1985(3). Thus, this Court does not reach the substantive issue of sex discrimination.

Since this Court has determined that plaintiff has failed to state a federal claim upon which relief may be granted, the Court need not reach the question of the *res judicata* effect of the prior state court judgment.

For the foregoing reasons, defendants' motion for summary judgment is granted.

Settle order on notice.