Barbara **GIRARD, Plaintiff-Appellant,**

v.

**94TH STREET AND FIFTH AVENUE CORPORATION et al., Defendants-Appellees.**

**No. 372, Docket 75–7443.**

United States Court of Appeals, Second Circuit.

Argued Oct. 1, 1975.

Decided Jan. 13, 1976.
Certiorari Denied May 19, 1976.
See 96 S.Ct. 2173.

Oakes, Circuit Judge, filed a dissenting opinion.

O. John Rogge, New York City, Ballon, Stoll & Itzler, New York City, of counsel, for plaintiff-appellant.

Martin I. Shelton, New York City (Geoffry R. Handler, James H. Schuyler, Shea, Gould, Climenko, Kramer & Casey, New York City, of counsel), for defendants-appellees.

Before WATERMAN, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Robert J. Ward, *District Judge,* granting defendants' motion for summary judgment by dismissing plaintiff's 42 U.S.C. § 1983[1] claim for failure to establish the necessary "state action," dismissing plaintiff's 42 U.S.C. § 1985(3)[2] claim because plaintiff did not establish the actionable "conspiracy" required, and dismissing plaintiff's pendent state claim. *Girard v. 94th Street and Fifth Avenue Corp.,* 396 F.Supp. 450 (S.D.N.Y., 1975).

---

1. 42 U.S.C. § 1983 reads:

   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. The pertinent part of 42 U.S.C. § 1985(3) reads:

   "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

In 1968, during their marriage, plaintiff's former husband purchased 497 shares of stock from 94th Street and Fifth Avenue Corporation ("the corporation"), the owner and manager of a cooperative apartment building in New York City. As part of that transaction, Mr. Girard obtained a proprietary lease to the fourth floor of the building. The Stock Certificate contains a restriction that the shares represented thereby may be sold only to the corporation or to an assignee of the proprietary lease after compliance with certain provisions of the proprietary lease, which required that Mr. Girard obtain the written consent of the board of directors before any assignment of his interest in the apartment could become effective; in the event of a violation of this restriction, the corporation could terminate the lease.

In 1973, as part of a separation agreement between plaintiff and her husband, Mr. Girard assigned his interest in the apartment to plaintiff in lieu of alimony; the separation agreement was incorporated into the judgment of divorce granted later that year. No consent to assignment from the board of directors had been solicited or received. When plaintiff subsequently requested that she be recognized as the lawful stockholder and tenant, the board of directors, giving no reason, refused its consent, rejected plaintiff's demand that the stock be transferred from Stephen Girard to Barbara Girard and refused to register the transfer on the books of the corporation.

Plaintiff then initiated suit ("Action # 1") in the Supreme Court of New York seeking both a declaration that the corporation's refusal was arbitrary, capricious, and unreasonable and an order compelling the corporation to transfer the stock on its books to her and to consent to an assignment of the lease.

The corporation commenced its own action ("Action # 2") for possession and eviction because of the unauthorized assignment and the failure to pay maintenance costs. The state court granted defendant's motion for summary judgment in Action # 1, finding that the consent provision of the lease was enforceable under state law and that "the cooperative apartment corporation had the right to refuse to consent to the transfer of the lease to plaintiff for any reason deemed satisfactory to it (except, of course, those prohibited by the Civil Rights Laws)." The Appellate Division, First Department, affirmed the order and judgment. 46 A.D.2d 848, 362 N.Y. S.2d 405 (1974). Plaintiff's motion for leave to appeal to the New York Court of Appeals was denied.

Plaintiff then instituted this suit, alleging that the corporate defendant and the individual defendants, as its officers and board of directors, violated her rights under 42 U.S.C. § 1983 by refusing to consent to the assignment of the lease solely because she is female. She also alleged that defendants conspired to deprive her of her civil rights because of her sex, a violation of 42 U.S.C. § 1985(3). Finally, plaintiff alleged that defendants violated New York Executive Law § 296(5)(a)(1) (1972).[3] Plaintiff sought a declaration of her rightful ownership of the stock and proprietary lease and an injunction preventing any wrongful interference with her peaceful possession of the premises.

## I. Plaintiff's Claim Under 42 U.S.C. § 1983

■ For the plaintiff to prevail under 42 U.S.C. § 1983 she must prove that the defendant, under color of any statute, ordinance, regulation, custom or usage of

---

**3.** New York Executive Law § 296(5)(a)(1) reads:

"It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to

be constructed, or any agent or employee thereof:

(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the race, creed, color, national origin or sex of such person or persons."

any state, has deprived her of a right secured by the Constitution and laws of the United States. *Adickes v. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An act chargeable to the state is a necessary element to be pleaded and proved. Plaintiff asserts that the judgments rendered by the state court in Action # 1 and Action # 2 constitute state action for § 1983 purposes.

Certainly a state court judgment can be state action. *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). We must decide if within the meaning and scope of § 1983 the state court's enforcement of the lease provision is a deprivation by state action of a right secured to plaintiff by that statute and the Constitution. In *Shelley v. Kraemer, supra,* 334 U.S. at 4, 68 S.Ct. at 838, the Supreme Court defined the question before it as "the validity of court enforcement of private agreements, generally described as restrictive covenants, which have as their purpose the exclusion of persons of designated race or color from the ownership or occupancy of real property." The white seller in that case had agreed to sell property to a black purchaser contrary to an agreement among property owners. Another owner sought to prevent the transfer by seeking enforcement of the agreement through court action. While stating that the private restrictive agreement itself did not violate Fourteenth Amendment rights, where the purposes of the agreements were secured only by judicial enforcement, the state was a participant within the meaning of the Fourteenth Amendment. *Shelley v. Kraemer, supra,* 334 U.S. at 13, 68 S.Ct. 836. The posture of the present case is significantly different from the situation in *Shelley,* however. The contested provision in *Shelley* was racially discriminatory on its face. The lease provision in question here, requiring consent of the board of directors before transfer is effective, can only be described as neutral; there is no suggestion of any prohibition of transfer of ownership on the basis of sex.

Summarizing prior holdings dealing with the state action concept, the Supreme Court has stated that "where the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations,' . . . in order for the discriminatory action to fall within the ambit of the constitutional prohibition." *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972). This Court has recognized the existence of a "double standard" of review for state action. In cases involving racial discrimination, a particularly offensive class-based discrimination, the court has used a "less onerous" test than for other claims. See *Jackson v. Statler Foundation,* 496 F.2d 623, 629 (2 Cir. 1974); *Weise v. Syracuse University,* 522 F.2d 397 (2 Cir. 1975); *Barrett v. United Hospital,* 376 F.Supp. 791, 797 (S.D.N.Y., 1974). In *Weise v. Syracuse University, supra,* 522 F.2d at 406, the court applied this less rigorous standard to a claim of sex discrimination, although the court was careful to note that it was not necessary to put sex discrimination in the same category as race discrimination in that case in order to do so.

Even applying this less burdensome standard, the district court below found that the state's participation here was solely to provide a disinterested forum. *Girard v. 94th Street and Fifth Avenue Corp., supra,* 396 F.Supp. at 455. See also *Stevens v. Frick,* 372 F.2d 378, 381 (2 Cir. 1967). In *McGuane v. Chenango Court Inc.,* 431 F.2d 1189, 1190 (2 Cir. 1970), *cert. denied,* 401 U.S. 994, 91 S.Ct. 1238, 28 L.Ed.2d 532 (1971), this Court noted that "[n]either, despite some language in *Shelley v. Kraemer* . . . can state action be found in New York [sic] providing defendant with the same right to secure the eviction of a tenant by a proceeding in its courts that it gives to almost all landlords; the one thing now almost universally agreed is that such a rationale for that landmark decision would be altogether too far-reaching." Since it cannot be said that the state's involvement in this case

approves[4] the allegedly discriminatory conduct, we affirm the dismissal by the district court of the § 1983 claim.

## II. Plaintiff's Claim Under 42 U.S.C. § 1985(3)

In 1971 the Supreme Court, in *Griffin v. Breckinridge,* 403 U.S. 88, 104, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), held that § 1985(3) reached certain private conspiracies to deprive others of their legal rights. A legally sufficient § 1985(3) complaint must aver a conspiracy between two or more persons intended to deprive any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the law and an act by one of the conspirators in furtherance of the conspiracy which injured another person or deprived him of exercising any right or privilege of a citizen of the United States. See *Griffin v. Breckinridge, supra,* 403 U.S. at 102–103, 91 S.Ct. 1790; *Cameron v. Brock,* 473 F.2d 608, 610 (6 Cir. 1973).

Plaintiff argues that her complaint satisfies the threshold requirement of a conspiracy between two or more persons. She has charged both a corporate defendant and individual defendants who constitute the officers and entire board of directors with conspiring to deprive her of her civil rights because of her sex; the individual defendants are alleged to "wholly dominate, operate and control" all of the business and financial affairs of the corporation. Plaintiff claims that as part of the conspiracy, the defendants advised the president and board of directors to deny plaintiff continued occupancy of the premises, refused to permit her to appear at any meeting of the board, refused to provide her with minutes of the meetings, rejected any payments offered or any guarantee of her

debt, harassed plaintiff by commencing legal proceedings of eviction and maliciously telephoned her at unreasonable hours to harass and annoy her. Defendants contend that no conspiracy can exist in this case since the corporation's decisions were formulated and carried out by its board of directors, the individual defendants, all of whom acted solely within their official capacities. Accepting plaintiff's allegations as true, the district court found that plaintiff failed to allege facts sufficient to constitute a conspiracy within the meaning of § 1985(3). *Girard v. 94th Street and Fifth Avenue Corp., supra,* 396 F.Supp. at 455. Decisions in this and other circuits fully support the district court's conclusion.

In *Dombrowski v. Dowling,* 459 F.2d 190 (7 Cir., 1972), plaintiff alleged that a realty corporation and its employee denied him rental space because many of his clients were members of minority groups. Noting that only one firm was involved and that the individual defendant acted within the scope of his authority as agent for that firm, the Court of Appeals for the Seventh Circuit held that

" . . . the statutory requirement that 'two or more persons . . . conspire . . . ' is not satisfied by proof that a discriminatory business decision reflects the collective judgment of two or more executives of the same firm. . . . " 459 F.2d at 196.

*Accord, Baker v. Stuart Broadcasting Company,* 505 F.2d 181, 183 (8 Cir. 1974); *Fallis v. Dunbar,* 386 F.Supp. 1117, 1121 (N.D.Ohio, 1974); *Cohen v. Illinois Institute of Technology,* 384 F.Supp. 202, 205 (N.D.Ill., 1974). *See also Nelson Radio & Supply Co. v. Motorola,* 200 F.2d 911, 914 (5 Cir., 1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953), for a

---

4. Indeed the state recently has enacted civil rights legislation which specifically prohibits cooperatives from refusing to consent to transfers because of sex. New York Civil Rights Law § 19–a(1) reads:

"No corporation formed for the purpose of the cooperative ownership of real estate within the state shall withhold its consent to the sale or proposed sale of certificates of stock or other evidence of ownership of an interest in such corporation because of the race, creed, national origin, or sex of the purchaser."

discussion of the conspiracy concept in an antitrust context.

Of the numerous authorities plaintiff cites, we find only *Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D. Pa., 1974) worthy of discussion.[5] In *Rackin,* plaintiff alleged sex discrimination by the University, its officers, and certain tenured faculty members. The district court found the *Dombrowski* rationale inapplicable to the facts of the case because of the continuing and varied instances of discrimination and harassment: not only was plaintiff given tenure in a department other than the one in which it was earned, a decision clearly contrary to normal university policy, but subsequently she had been assigned only freshmen courses outside her area of specialty. The court found that these actions, more than a single decision by one business entity, supported a conspiracy allegation. 386 F.Supp. at 1005.

The situation at the University of Pennsylvania was unlike the situation here. Here there is but one single business entity with a managerial policy implemented by the one governing board, while at the University of Pennsylvania, each department had its own disparate responsibilities and functions so that the actions complained of by the plaintiff were clearly not actions of only one policymaking body but of several bodies; thus the court correctly held that the allegations supported a claim of conspiracy among them. Here plaintiff's allegations of multiple acts by the directors are not alleged to be other than the implementation of a single policy by a single policymaking body. Indeed, defend-

ants here would seem to be safely within the area of the *Dombrowski* decision and quite outside that of *Rackin.*

In the instant case, the individual defendants comprise the board of directors through which the corporation acted. The lease agreement specifically required the consent of the board before any transfer of ownership interest could be effective. In claiming that defendants advised the board and president to deny her continued occupancy, refused to permit a personal appearance, provide her with minutes, accept payments or a debt guarantee and commenced legal action, plaintiff does not allege that any of the individual defendants acted in any other capacity than his official role of director. As found by the court below,

"Although the decision plaintiff challenges reflected the collective judgment of 'two or more persons,' the decision cannot be considered the product of a conspiracy when the board was merely carrying out the corporation's managerial policy." 396 F.Supp. at 455–56.

Plaintiff next argues that defendants conspired by maliciously telephoning her at unreasonable hours in order to harass her into giving up her struggle to maintain occupancy. Again, plaintiff does not assert that the individual defendants were acting other than as officers and directors; the complaint identifies them only by their corporate status. The fact that they were also shareholders and tenants of apartments in the defendant-corporation's building does not aid plaintiff's case, since she did not allege that the individual defendants were motivat-

5. Among others, plaintiff also cites *Pendrell v. Chatham College,* 370 F.Supp. 494 and 386 F.Supp. 341 (W.D.Pa., 1974) and *Westberry v. Gilman Paper Company,* 507 F.2d 206 (5 Cir. 1975), in support of her conspiracy claim. The decision in *Pendrell* is not instructive regarding the conspiracy element of a § 1985(3) claim. The two district court opinions in *Pendrell* focused on the state action aspect of a § 1983 claim against a private university and whether plaintiff satisfied the second element of a § 1985(3) claim, which is not at issue here. Insofar as the conspiracy aspect of a § 1985(3) claim is concerned, the district court

merely stated that "[h]er complaint clearly alleges that the 'defendants, some or all of them, conspired and acted in concert pursuant to a common scheme . . .', thus satisfying element (1) [conspiring] of *Griffin.*" *Pendrell v. Chatham College, supra,* 370 F.Supp. at 500. Because there is no analysis, it is difficult to assign much weight to this finding.

*Westberry v. Gilman Paper Company, supra,* 507 F.2d at 216, was withdrawn after a rehearing *en banc* with orders to the district court to dismiss as moot, "so that it will spawn no legal precedents."

ed by any independent personal stake in achieving the corporation's objective. In *Cole v. University of Hartford,* 391 F.Supp. 888, 893 (D.Conn., 1975) the court stated that

> "[s]imply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation. The plaintiff must also allege that they acted other than in the normal course of their corporate duties. . . . '[I]t is not alleged that the individual defendants committed any act of a personal nature except in connection with the corporate affairs.'"

Accordingly, we hold that plaintiff's § 1985(3) claim must be dismissed for failure to state an actionable conspiracy under the statute.

### III. *Plaintiff's State Claim*

■ Plaintiff also alleged a violation of New York Executive Law § 296(5)(a)(1). However, since we have dismissed plaintiff's federal claims for failure to state a cause of action, we will avoid making "[n]eedless decisions of state law" and, exercising our discretion, dismiss her pendent state claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Finally, the Court need not decide what effect the prior state court decision would have had upon the present action under the doctrine of *res judicata.*

The order of the district court is affirmed.

OAKES, Circuit Judge (dissenting):

I respectfully dissent.

In my view the complaint alleges facts which are sufficient to state a substantial claim under 42 U.S.C. § 1985(3). Since appellant has also raised a claim under the laws of New York, we have pendent jurisdiction over the state law claim so long as "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *See also Van Gemert v. Boeing Co.,* 520 F.2d 1373, 1382 (2d Cir. 1975), *cert. denied,* 423 U.S. 947, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975).[1] Appellant's complaint cites New York Executive Law § 296(5)(a)(1) (McKinney 1974) as the source of her state law claim.[2] However, this section of the New York Human Rights Law is not enforceable in federal court, but is part of an administrative scheme which is administered by the state Division of Human Rights. The Division investigates complaints, has hearings and issues orders upon complaints filed by persons who claim their rights have been violated. *Id.* § 297. These orders are subject to judicial review in the state courts. *Id.* § 298. Obviously the federal courts cannot take jurisdiction over the state remedy with its administrative procedures, exhaustion of which is essential.

But New York Civil Rights Law § 19–a (McKinney 1975–1976 Supp.) provides a basis for a pendent state claim

---

1. *See also Rosado v. Wyman,* 397 U.S. 397, 404, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062 (1933).

2. At the time appellant filed this action, New York Executive Law § 296(5)(a)(1) provided:

(a) It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other per-

son having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof:

(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the race, creed, color, national origin, sex, or disability of such person or persons.

Paragraph (1) has since been amended to include the words "or marital status" after the word "disability."

which is inherent in the appellant's pleaded allegations. That section provides that

> No corporation formed for the purpose of the cooperative ownership of real estate within the state shall withhold its consent to the sale or proposed sale of certificates of stock or other evidence of ownership of an interest in such corporation because of the race, creed, national origin, or sex of the purchaser.

*Id.* It is obvious that the claim arising under this state statute[3] has the same "common nucleus of operative fact" as appellant's federal claim. Therefore, "considerations of judicial economy, convenience and fairness to litigants," *United Mine Workers of America v. Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139, appear at this stage of the case to weigh in favor of resolution of the state claim in the federal court proceedings.

It is well to remember that federal jurisdiction is conferred here by 28 U.S.C. § 1343(1), (3), (4), and 28 U.S.C. § 1331(a).[4] Resort is had to 42 U.S.C. § 1985(3) only to determine whether a claim is stated thereunder, since it creates the cause of action. *See McNeese v. Board of Education,* 373 U.S. 668, 671 & n. 1, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) (§ 1983 action); *Byrd v. Sexton,* 277 F.2d 418 (8th Cir.) (Blackmun, Circuit Judge), *cert. denied,* 364 U.S. 818, 81 S.Ct. 49, 5 L.Ed.2d 48 (1960); *Campbell v. Glenwood Hills Hospital, Inc.,* 224 F.Supp. 27, 29 (D.Minn.1963).

Where, as here, allegations in a complaint are sufficient to state a § 1985(3) conspiracy claim, the trial court may resolve both the § 1985(3) claim and the state claim, or, which may be preferable, avoid resolving the § 1985(3) claim on the merits if the pendent state claim permits disposition of the case. Here, as in *Siler v. Louisville & Nashville Railway Co.,* 213 U.S. 175, 191, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909), once a federal question is substantially alleged, the court has

> the right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only.

To put it another way, resolution of the state law claim here alone is proper, and would permit avoidance of an "avoidable" decision under federal civil rights law. *See* P. Bator, P. Mishkin, D. Shapiro and H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System (2d ed. 1973) at 922–23; C. Wright, Law of Federal Courts (1970) § 19, at 62–65. *See generally* Note, *UMW v. Gibbs and Pendent Jurisdiction,* 81 Harv. L.Rev. 657 (1968).

The complaint names three individual defendants as well as the corporate defendant and alleges that they have conspired with each other to deprive appellant of her civil and property rights. The court below found that appellant's complaint did not state a claim under § 1985(3) because the court interpreted the complaint as failing to assert that the individual defendants were acting outside their official capacity as directors of the defendant corporation. Thus, the court reasoned, the actions of the indi-

---

**3.** New York Civil Rights Law § 19–b (McKinney 1975–1976 Supp.) provides that "[a]ny person aggrieved by a violation of section nineteen–a . . . shall have a right of action in any court of appropriate jurisdiction to restrain such violation and for other equitable remedies, including such affirmative and other relief as may be necessary to undo the effect of such violation."

**4.** Probably §§ 1331(a) and 1343(1) are the most applicable, § 1331(a) because the jurisdictional amount test is clearly satisfied and it

is property rights of which appellant claims to be deprived, *see Hague v. CIO,* 307 U.S. 496, 518–32, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Note, *Jurisdictional Amount in Civil Rights Cases,* 9 U.Chi.L.Rev. 302 (1942), and § 1343(1) because it is the jurisdictional counterpart to 42 U.S.C. § 1985(3). Moreover, unlike § 1343(3), neither § 1331(a) nor § 1343(1) contains a requirement of infringement of rights under "color of state law." *See Lynch v. Household Finance Corp.,* 405 U.S. 538, 547, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

vidual defendants "cannot be considered the product of a conspiracy when the board was merely carrying out the corporation's managerial policy." 396 F.Supp. 450, 456.

It is, to be sure, basic conspiracy law that a corporation cannot conspire with its agents or employees acting within the scope of their employment, *Pearson v. Youngstown Sheet & Tube Co.*, 332 F.2d 439 (7th Cir.), *cert. denied*, 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185 (1964). And it has been said that if the conspiratorial conduct challenged is essentially a "single act of discrimination by a single business entity," the fact that two or more agents participated in the decision or act will "normally not constitute" a § 1985(3) conspiracy. *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972). But here the individual defendants were not alleged to be simply agents or employees of the corporate defendant, nor to be acting in the scope of their employment, nor to be acting for the corporate benefit. A closer reading of the complaint indicates that appellant explicitly alleges that the injurious acts of the individual defendant conspirators were indeed committed in their individual, not their corporate, capacities.

Here the complaint alleges that the individual defendants "constitute the officers and the entire Board of Directors of the corporate defendant, and *wholly dominate, operate and control all its business and financial affairs.*" (Emphasis added.) These allegations alone serve to distinguish this case from *Dombrowski, supra.* As recognized by Judge McMillen in *Cohen v. Illinois Institute of Technology*, 384 F.Supp. 202, 205 (N.D. Ill.1974), the case is entirely different when the individual officers or directors are "alleged to have controlled [the corporate defendant] or to have personally committed acts of discrimination . . . ."[5] In such a case, as here, the individuals are not acting at the direction of their corporate employer or necessarily for its benefit.

Further, the complaint alleges that the defendants, "in furtherance of the said design and conspiracy,"

[a]dvised, caused, permitted and allowed the President and the Board of Directors of the corporate defendant to deny plaintiff permission and authority to continue occupancy of the subject premises.

Surely the implication of such an allegation is not that the defendants in their capacity as corporate agents advised themselves to act in their capacity as corporate agents. Rather, it is that defendants in their individual capacities determined according to personal motives that they would cause managerial action by the president and the board of directors to serve their individual interests. The crux of this allegation is that defendants acted, albeit behind the screen of their corporate roles, in an individual and not an official capacity.

Here, indeed, the complaint also alleges that "the purpose, intent and result" of the conspiracy "was to enable, permit and allow the said defendants to receive for their own use and benefit and not for the benefit of plaintiff the sole and exclusive right to determine who shall own said shares of stock and the proprietary lease in the subject premises . . . ." (Emphasis added.) As shareholders in the cooperative corporation and as leaseholders in the building it would be to their individual financial benefit to have the Girard apartment revert to the corporation and it might very well be to their personal benefit to acquire the apartment for themselves. These allegations as to personal motives alone further serve to distinguish this case from the corporate-agent cases referred to above. *See Nelson Radio & Supply Co. v. Motorola*, 200 F.2d 911, 914

---

5. While in *Baker v. Stuart Broadcasting Co.*, 505 F.2d 181, 183 (8th Cir. 1974), two of the three named individual defendants owned 100 per cent of the stock of the corporation, the nature of this ownership or its relevance to the alleged conspiracy was not discussed. The decision cannot therefore be deemed illuminating on this point.

(5th Cir. 1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).

Moreover, acts engaged in as a part of the conspiracy by defendants allegedly include deliberate and malicious "telephone calls to plaintiff at unreasonable hours solely for the purpose of harassing and annoying her in order to force plaintiff to vacate said premises . . . ." Such conduct, if established, would surely be individual and noncorporate in nature; nor are these allegations to be lightly disregarded or passed off as being de minimis. *Cf. Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D. Pa.1974).

All of these factors in my view make the question whether the alleged § 1985(3) conspiracy existed one that certainly is substantial, so as to supply, even if it does not succeed on its own merits, clear pendent jurisdiction of the state law claim.

There is, to be sure, another question, left open in *Griffin v. Breckinridge,* 403 U.S. 88, 102 n. 9, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable" under § 1985(3). A series of recent Supreme Court cases, perhaps the foremost of which is *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), point the way toward an affirmative answer in cases involving bias on account of sex. One would estimate that deprival of valuable property rights on account of a person's gender would constitute a denial "of the equal

protection of the laws" within § 1985(3), as well as within the Fourteenth Amendment. *See Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

There is, in short, a claim under this federal civil rights statute to warrant federal jurisdiction under 28 U.S.C. § 1331(a) or § 1343(1), and under the principles of pendent jurisdiction above enumerated clearly to support consideration of the state law claim under the New York Civil Rights Law. I would reverse and remand for that consideration.[6]

---

**6.** Appellees have argued that this suit is barred by the res judicata effect of a prior state court action brought by appellant against these same appellees. In the state court litigation, however, appellant merely contended that the appellees' refusal to assign to her the shares of the corporation owned by her former husband was in breach of the lease agreement and state corporations law. No violation of civil rights was alleged in the state court action, and the state judge, in ruling against appellant's claim, stated only that appellees have the right to refuse to consent to the transfer of a cooperative lease for any reason "except, of course, those prohibited by the Civil Rights

Law." *Girard v. 94th Street and Fifth Avenue Corp.,* Civ. No. 15173/73 (Supreme Court, New York County, July 8, 1974) (memorandum opinion). Only the other day, in *Herendeen v. Champion International Corp.,* 525 F.2d 130 (2d Cir. 1975), we held under New York law that where a plaintiff in a second suit sets forth "an independent claim of defendant wrongdoing" the first suit does not bar the second even though the plaintiff "could have joined" the second suit claim with the first. *Id.* at 134. While Mrs. Girard could have joined her civil rights claim in her state court suit she did not do so. She is not barred, therefore, from asserting it now.