**Alfred TUFANO, Plaintiff,**

v.

**ONE TOMS POINT LANE CORPORATION, et al., Defendants.**

**No. 98–CV–7020(JS).**

United States District Court, E.D. New York.

Sept. 13, 1999.

Alfred Tufano, Howard Beach, New York, plaintiff pro se.

Dale J. Degenshein, Cantor, Epstein, Bailey & Degenshein, LLP, New York City, for One Toms Point Lane, defendants.

George Nager, Hempstead, NY, for Lee & George Kalinsky, defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

SEYBERT, District Judge.

Presently pending before the Court are Plaintiff's objections to Magistrate Judge E. Thomas Boyle's Report and Recommendation (hereinafter "R & R"), dated July 17, 1999, recommending dismissal of Plaintiff's complaint in its entirety for failing to state a claim upon which relief can be granted, with leave to replead within 45 days, and recommending that the *lis pendens* file against the Kalinsky cooperative shares be vacated.

### BACKGROUND

Familiarity with the factual and procedural history of this litigation is presumed. An abridged version of the events leading up to the filing of the lawsuit involves a contract entered into between Plaintiff Alfred Tufano and Defendants George Kalinsky and Lee Kalinksy (hereinafter "the Kalinskys"), on or about October 7, 1998, for the sale of 440 shares of stock in a cooperative housing corporation, One Toms Lane Corporation (hereinafter the "Corporation"), and the proprietary lease for unit 9H, subject to the approval of the Corporation. On or about October 29, 1998, Plaintiff was interviewed by a "screening committee" comprised of Defendants Barbara Healy and Mrs. Mac-Mann, at which time Plaintiff also presented previously requested documents. On or about November 6, 1998, the day after the Board of Directors of the Corporation (hereinafter the "Board"), held a meeting to consider Plaintiff's application, Tufano's attorney was informed that the application was disapproved, without reason, and a letter to that effect, dated November 7, 1998, (hereinafter the "Letter"), was sent by the Board to Alfred Tufano.

On November 10, 1998, Plaintiff filed the instant action, initially alleging a conspiracy and fraud by Defendants to violate Plaintiff's civil rights in violation of 42 U.S.C. §§ 1983 & 1988, and a claim for unfair competition under New York state law. Plaintiff filed an Amended Complaint on November 24, 1998, adding jurisdictional predicates pursuant to 42 U.S.C. §§ 1981 & 1982, the United States Constitution and the Fair Housing Act. After issue was joined, Defendants moved to dismiss and/or for summary judgment and Plaintiff cross-moved for summary judgment. The Kalinskys also moved to vacate the *lis pendens,* filed with the Clerk of the County of Nassau on November 10, 1998, against their apartment.

### DISCUSSION

### I. STANDARD OF REVIEW

A motion to dismiss or for summary judgment is a dispositive motion and as such it may be referred to a Magistrate Judge for proposed findings of fact and recommendations for its disposition pursuant to 28 U.S.C. § 636(b)(1)(B), and specific objections thereto shall be reviewed de novo by this Court to accept, reject, or modify, in whole or in part, the Magistrate's findings or recommendations. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b).

Magistrate Judge Boyle, in a thorough and well-reasoned opinion, counseled dismissal of the complaint because, *inter alia,* there are no allegations articulating a civil rights violation, nor has the complaint been pled with sufficient particularity to allege fraud or to state a claim sounding in conspiracy. Moreover, as this Court finds, a review of the complaint and other documents reveals that there is no claim alleged against the Kalinskys, save Tufano's oral assertion at a hearing that they are "intertwixed and intertwined with the Corporation."

### II. STANDARD GOVERNING MOTIONS TO DISMISS

A district court should grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if "it is clear that no relief could be granted under any

set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.* at 249, 109 S.Ct. at 2906; *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed.R.Civ.P. 8(a)(2) to demonstrate liberal system of 'notice pleading' employed by the Federal Rules of Civil Procedure). This is especially so when analyzing a complaint filed by a *pro se* plaintiff. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). When the complaint alleges a violation of a civil rights statute, allegations must specify the violations rather than offering "a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987); *see also Leon v. Murphy*, 988 F.2d 303, 310 (2d Cir.1993) (" 'A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.' ") (quoting *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983)); *Neustein v. Orbach*, 732 F.Supp. 333, 346 (E.D.N.Y.1990) (holding to survive a motion to dismiss, a civil rights complaint must contain "more than naked improbable unsubstantiated assertions without any specifics"). The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim."

The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993); *see also International Audiotext Network, Inc. v. American Tel. & Tel.*, 62 F.3d 69, 72 (2d Cir.1995); *Paulemon v. Tobin*, 30 F.3d 307, 308–09 (2d Cir.1994); *Rent Stabilization Ass'n of the City of New York v. Dinkins*, 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels*, 992 F.2d at 15).

■ According to Rule 12(b), however, "[i]f, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." A district court may not convert a motion under Fed.R.Civ.P. 12(b)(6) into a Rule 56 motion for summary judgment without sufficient notice to the opposing party to respond. *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir.1995). The essential inquiry is whether the plaintiff should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings. *In re G. & A. Books, Inc.*, 770 F.2d 288, 294–95 (2d Cir.1985).

■ In deciding whether to convert a motion to dismiss into one for summary judgment, the Court recognizes that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. *Cortec Indust. Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir.1991). When a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may under certain circum-

stances take the document into consideration in deciding the defendant's motion to dismiss without converting the proceeding to one for summary judgment. *Id.* at 47–48; *International Audiotext Network*, 62 F.3d at 72. In addition, the Court may consider documents annexed to the movant's papers which, although not annexed to the complaint, plaintiff either had in his possession or had knowledge of and upon which he relied in bringing suit. *Roucchio v. Coughlin*, 923 F.Supp. 360, 366 (E.D.N.Y.1996) (citing *Cortec*, 949 F.2d at 48). The Second Circuit has warned, however, that it is error to consider factual allegations contained in legal briefs or memoranda without converting the motion to one for summary judgment. *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988).

Here, the parties have submitted affidavits and correspondence beyond the pleadings. Further, the parties are aware that the Court might convert this motion into summary judgment, in fact, Defendant has moved to dismiss or in the alternative for summary judgment and Plaintiff has cross-moved for summary judgment. Because Judge Boyle recommended dismissal of the instant action without prejudice to replead, it is unnecessary for the Court to consider whether the motion to dismiss should be converted to a motion for summary judgment, however, the Court will utilize the affidavits and other documents presented, as all parties are sufficiently on notice that summary adjudication is a feasible option. It is within this framework that the Court addresses Tufano's specific objections to Magistrate Judge Boyle's Report and Recommendation.

## III. TUFANO'S OBJECTIONS

### A. Conspiracy Claims

First, Tufano declares that he is not alleging a conspiracy pursuant to 42 U.S.C. § 1985(3), yet Plaintiff's Amended Complaint, although never citing § 1985, does allege that Defendants "acting as an entity within a corporation, as a board of directors, having held meetings and communications did conspire to violate plaintiff's ... civil rights." (Pl.'s Compl. ¶ 7.) Although the Court does not believe Plaintiff wishes to abandon his conspiracy claim, the first objection to the utilization of § 1985 is without merit. A claim alleging conspiracy to violate civil rights is properly brought pursuant to § 1985. 42 U.S.C. § 1985(3) provides, in relevant part:

> If two or more persons in any state ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

■■■ With respect to the alleged conspiracy, Magistrate Boyle properly reported that the pleadings require allegations that Defendants not only engaged in a conspiracy to deprive Plaintiff of the equal protection of the laws or the equal privileges and immunities under the laws, and acted in furtherance thereof, but that such actions deprived Plaintiff of a right or privilege of a citizen of the United States. *See New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir.1989). Further, the statute requires a racial or class-based discriminatory animus behind the conspirators' action. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir.1993). For numerous reasons, Plaintiff's conspiracy claim must fail. As discussed *infra*, Plaintiff did not allege a racial or class-based discriminatory motivation or intent in his Amended Complaint, in addition, the Court concludes that Plaintiff's constitutional rights were not violated, and finally, the intracorporate conspiracy doctrine also bars Plaintiff's conspiracy claim.

■ Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together. *See Solla v. Aetna Health Plans of New York Inc.*, 14 F.Supp.2d 252, 257 (E.D.N.Y. 1998). Although the Supreme Court has yet to address the issue, the Second Circuit has imported the intracorporate conspiracy doctrine into Section 1985 jurisprudence, dismissing a claim of conspiracy against officers and employees of a nonprofit institution. *See Herrmann v. Moore*, 576 F.2d 453 (2d Cir.1978). "Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees." *Rini v. Zwirn*, 886 F.Supp. 270, 292 (E.D.N.Y. 1995) (applying intracorporate conspiracy doctrine in the context of municipal defendants).

The Second Circuit has addressed this exact issue in a similar setting. *See Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66 (2d Cir.1976). In *Girard*, as part of a separation agreement, Mr. Girard attempted to assign his interest in his co-op to his wife, without receiving consent from the board as required. *Id.* at 68. Mrs. Girard unsuccessfully brought suit in New York Supreme Court, which held the consent provision enforceable under state law. *Id.*

Plaintiff then initiated suit in federal court alleging that the board refused to consent to the assignment of the proprietary lease because she is female, in violation of 42 U.S.C. § 1983, and that the defendants conspired to deprive her of her civil rights because of her sex, in violation of 42 U.S.C. § 1985(3). *Id.* Affirming the court's dismissal of the conspiracy claim, the Second Circuit stated:

> In the instant case, the individual defendants comprise the board of directors through which the corporation acted. The lease agreement specifically required the consent of the board before any transfer of ownership interest could be effective . . . . plaintiff does not allege

that any of the individual defendants acted in any other capacity than his official role as director. As found by the court below, "[a]lthough the decision plaintiff challenges reflected the collective judgment of 'two or more persons,' the decision cannot be considered the product of a conspiracy when the board was merely carrying out the corporation's managerial policy."

*Id.* (quoting *Girard v. 94th St. & Fifth Ave. Corp.*, 396 F.Supp. 450, 455–56 (S.D.N.Y.1975)).

Tufano's objections in support of a conspiracy claim state, "[c]ontrary to Magistrate Boyle's assessment corporations, corporate officers, shareholders, management, employers, and agents can be held responsible for any discriminatory unlawful act(s) committed by anyone of the above mentioned." Tufano's further contention that the Letter standing alone satisfies the conspiracy standard is patently wrong. A conspiracy claim in this setting must allege more than a meeting of the Board and an adverse decision resulting therefrom. Moreover, as explained, a decision rendered by a board of directors as a singular corporate body cannot be the basis of a conspiracy claim, absent the personal interest exception, inapplicable herein. *See Bond v. Board of Education of the City of New York*, No. 97 CV 1337, 1999 WL 151702, at *1 (E.D.N.Y. March 17, 1999). Accordingly, the Court adopts Magistrate Judge Boyle's recommendation to dismiss Plaintiff's conspiracy claim.

Tufano's second objection centers around Magistrate Boyle's descriptive reference that "the gravamen of Tufano's complaint is that he was denied approval by the Co-op board . . ." to which Plaintiff objects because it was the Letter, annexed to the complaint as Exhibit B, which is the instrument by which he was disapproved. Once again, Tufano raises insignificant matters. The Letter, serving as documentary evidence that Tufano was disapproved, merely proves a given, and standing alone, provides no evidence of

discrimination. As will be discussed, the Board was under no obligation to provide a reason for denying Plaintiff the right to purchase the cooperative shares, and no inference can be drawn from this equivocal action. It clearly does not, as Plaintiff suggests, establish a "minimum violation of the Fair Housing Act."

**B. Restrictions on Alienability of Cooperative Shares**

■ Cooperative corporations are a special form of ownership of real property which enjoy broad discretion in their decisions to accept or reject potential purchasers. *See Levandusky v. One Fifth Ave. Apartment Corp.*, 75 N.Y.2d 530, 538, 554 N.Y.S.2d 807, 812, 553 N.E.2d 1317 (1990) (finding that "[s]o long as the board acts for the purposes of the cooperative, within the scope of its authority and in good faith, courts will not substitute their judgment for the board's)"; *see also* 2 Patrick J. Rohan & Melvin A. Reskin, *Real Estate Transactions: Cooperative Housing Law and Practice* § 7.02[2] (1998) (stating that a cooperative board may "grant or withhold consent, for any reason or for no reason"). Only where the board's decision exceeds the scope of its authority or when it is made in bad faith or in a discriminatory fashion is judicial review appropriate.

**C. Fair Housing Act Claim**

Plaintiff misunderstands discrimination as it applies to the Fair Housing Act, and the proof required therein. This also explains his misplaced repeated reference to "discriminatory effect and impact." Although it is a correct statement of law to assert that evidence of discriminatory effect alone can be sufficient to establish a prima facie case of a Fair Housing Act violation, it is a *non sequitur* to declare that the denial of Tufano's application automatically constitutes discrimination. Discrimination in the context of a Fair Housing Act violation does not arise whenever someone believes they have been wronged in a housing matter, even if the

adverse decision stems, for example, from a misguided personal dislike and not from an objective suitable assessment. The civil rights laws are clear, as is the language of the Fair Housing Act which defines discrimination in housing as "refus[ing] to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

■ Nowhere in the Amended Complaint does Plaintiff allege that the reason he was discriminated against was related to any of the six denominated determinants. Because these factors are absent from Plaintiff's allegations, there is no discriminatory nexus, as required. Thus, even though a plaintiff need not prove a discriminatory intent, the denial of housing to a protected class member provides the necessary element of discrimination. Instructive is *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir.1979), in which the Second Circuit reversed and remanded a denial of a Fair Housing Act claim where a black prospective resident's purchase into an otherwise all white building was disallowed by the board. Accordingly, the board's decision resulted in a discriminatory effect because the plaintiff may have been denied housing because of his race. *Id.* at 1037.

However, in Plaintiff's objections and in his motion for summary judgment, he first includes, "[t]hat he is a member of a racial minority. In that plaintiff's father has (black) African relatives by way of Sicilian descent in Italy, and Plaintiff's grandmother is of mixed descent of 'Indian' and Italian." This post hoc rationalization does not satisfy the statutory requirements, rather, it cheapens the goals and purposes of the Fair Housing Act. When Congress passed this momentous legislation it neither envisioned nor intended to authorize putative plaintiffs to forage their family trees in hopes that they bear fruit of minority lineage, no matter how remote. In any event, it was not included in the

Amended Complaint and is not part of the pleadings.

■ Because of the difficulties inherent in proving discriminatory intent, the courts borrowed the burden-shifting analysis used in Title VII cases. *Frazier v. Rominger,* 27 F.3d 828, 831 (2d Cir.1994). It is only after a plaintiff establishes a prima facie case does the burden shift to the defendant to offer evidence of the reason why its action was taken. *Robinson,* 610 F.2d at 1039. A prima facie case is established by showing that: (a) the plaintiff belongs to a class protected by the statute, (b) the plaintiff sought and was qualified for the dwelling, (c) the plaintiff was denied the opportunity to rent the dwelling, and (d) the dwelling remained available. *Cabrera v. Jakabovitz,* 24 F.3d 372, 381 (2d Cir.1994).

The first prong implicitly requires the defendant to be aware that the plaintiff belonged to a protected class. To suggest otherwise would allow rejected applicants to subsequently introduce evidence of their race, color, religion, sex, familial status, or national origin—which was not known or considered during the decision-making process—to prove that the adverse decision was made because of that applicant's race, color, religion, sex, familial status, or national origin. Such a flawed process would yield irrational results. *See, e.g., Soules v. United States Dep't of Housing & Urban Dev.,* 967 F.2d 817, 822 (2d Cir. 1992) (prima facie case established where prospective tenant had a twelve year-old daughter and respondents denied her the apartment, knowing of the familial status); *Hamilton v. Svatik,* 779 F.2d 383, 387 (7th Cir.1985) (requiring plaintiff to show "that 1) she belongs to a minority; 2) the defendant was aware of it;" *inter alia,* to establish a prima facie case); *Burnett v. Venturi,* 903 F.Supp. 304, 311 (N.D.N.Y.1995) (prima facie case established, in part, because plaintiffs had three children under 18 years old and defendants denied the house to plaintiffs, knowing of their familial status); *Irizarry v. 120 West 70th Own-*

*ers Corp.,* No. 86 Civ. 3503, 1986 WL 8073, at *4 (S.D.N.Y. July 15, 1986) (prima facie case was established because, *inter alia,* prospective purchaser's application clearly indicated he was of Hispanic origin).

Plaintiff's assertion that he has the financial wherewithal to purchase the cooperative apartment effectively puts the cart before the horse. Although courts have conducted *de novo* reviews of a co-op board's asserted financial reason for denying an applicant, this occurs only where the rejected purchaser is a member of a protected class, and that status is known to the board when the adverse decision is made. Because Tufano is not a perceptible member of a protected class, the Board's decision could not have been made because of his race, and therefore, no explanation for the decision need be provided.

■ Plaintiff fails herein to adequately plead discrimination on the basis of race, or any other prohibited factor, and it is illogical to credit the Board with knowing not only that Plaintiff was Italian, but that he was specifically Sicilian, and, that Sicilians descended from a black race, or for that matter, that Tufano's grandmother is part Indian. To discriminate because of race necessarily requires knowledge or belief on the wrongdoer's part that the victim is a minority. · Because Plaintiff's newfound claim of minority status, which was absent from the Amended Complaint, is questionable at best, and because it was clearly not evident to the Defendants when they declined to approve Mr. Tufano's application, *a fortiori,* the Defendants did not discriminate because of Alfred Tufano's race. Thus, it is evident that "racial motivation did not play any role" in rejecting Tufano's application. *Robinson,* 610 F.2d at 1038; ·see also *Duckett v. Silberman,* 568 F.2d 1020, 1023–24 (2d Cir.1978) (affirming dismissal of Fair Housing Act claim because "there was no evidence that race actually was considered a factor by the seller"). Hence, Plaintiff's complaint is missing the necessary causal link. As

such, the Letter denying Tufano's application is not probative of discrimination, and therefore, Defendant Board need not proffer any explanation for its decision. *See Weisner v. 791 Park Ave. Corp.* 6 N.Y.2d 426, 190 N.Y.S.2d 70, 75, 160 N.E.2d 720 (1959).

It is important to note that Tufano never claimed, either initially or at this juncture, that he has been discriminated against on the basis of national origin because he is an "Italian–American." "Italian–American" falls within this purview because "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.,* 414 U.S. 86, 88, 94 S.Ct. 334, 336, 38 L.Ed.2d 287 (1973). Accordingly, Plaintiff's Fair Housing Act claim must be dismissed.

### E.  Section 1983 Claim

■ Because Plaintiff has failed to state a claim upon which relief can be granted pursuant to the Fair Housing Act, his generalized assertions that his civil rights have been violated are unfounded. The Amended Complaint avers a claim pursuant to 42 U.S.C. § 1983, which requires proof that the defendant, under color of any statute, ordinance, regulation, custom or usage of any state, has deprived plaintiff of a right secured by the Constitution and laws of the United States. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Notwithstanding the only plausible nexus, that Defendant One Toms Point Lane Corporation is incorporated under the laws of New York State, there is no "state action" involved and therefore this claim must also fail. *See Leeds v. Meltz,* 85 F.3d 51, 54 (2d Cir.1996) (holding that extensive regulation and even public funding, either alone or taken together, will not transform a private actor into a state actor); *Ponticelli v. Zurich Am. Ins. Co.,* 16 F.Supp.2d 414, 426 (S.D.N.Y.1998) ("Zurich cannot be deemed to be acting under color of state law by virtue of the fact that it is licensed to conduct business in New York."); *Glendora v. Cablevision Sys. Corp.,* 893 F.Supp. 264, 269 (S.D.N.Y.1995) (finding that although the defendant is subject to state and federal regulation, or operates pursuant to a government franchise, this does not transform its actions into state action). Nor is this a situation in which a county or municipality is acting in a manner inconsistent with fair housing objectives and its obligations. *See United States v. Incorporated Village of Island Park,* 888 F.Supp. 419, 445 (E.D.N.Y. 1995).

Accordingly, absent a valid claim pursuant to federal law, Plaintiff is without subject matter jurisdiction. In addition, to the extent Plaintiff can allege a valid state law claim, which he has not done herein, the Court elects not to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3).

### F.  Fraud Claim

■ The Court concurs with Magistrate Boyle's determination that Plaintiff's fraud claim is not pled with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Because the Letter revealing the Board's decision to deny Tufano's application is not "smoking gun" evidence of discrimination, it does not provide the time, place, content, identity and reasoning of fraud that Plaintiff suggests, hence, the Amended Complaint fails to adequately plead a cause of action sounding in fraud. The Court notes that had Plaintiff attempted to communicate with the Board after his application was rejected or tried to make further inquiry into the decision-making process— without initiating this action and filing a *lis pendens* three days thereafter—the complaint may not have been based primarily upon surmise and innuendo, as it so appears.

### G.  Unfair Competition

■ Magistrate Boyle properly recommended dismissal of Plaintiff's unfair com-

petition claim, to which Tufano raises no objection, because such a claim can only arise in a business context, a situation inapplicable herein.

## H. Breach of Contract

With respect to a breach of contract claim, Plaintiff has failed to plead a valid claim. Because the contract of sale was predicated upon the approval of the Board, the failure of this condition precedent to performance to occur relieves the Kalinskys of their obligations. *See Shandler v. Bauz*, 121 A.D.2d 619, 620, 503 N.Y.S.2d 648, 649 (2d Dep't 1986). Accordingly, Judge Boyle rightly recommended dismissal of Tufano's contract claim.

## G. *Lis Pendens*

The Kalinskys move this Court to vacate the *lis pendens* filed against the cooperative apartment. Because Plaintiff's complaint is dismissed in its entirety, the Court is also Ordering the vacature of the *lis pendens*. The Court is in receipt of, and has considered Plaintiff's untimely "Supplemental Answer, Defenses, and Objections" which was proffered to address the *lis pendens* issue. Plaintiff's citation to an article describing the recently enacted Nassau Country Transfer Tax, and its applicability to shares of a cooperative apartment, does not establish that the Legislature intended to answer the unsettled question of whether a notice of pendency may be filed against cooperative apartments, but only that the Legislature wishes to tax as many transfers effecting property as possible. Because this Court is adopting Judge Boyle's Report and Recommendation and granting Defendant's motion to dismiss, it is unnecessary to decide this unsettled issue as there will be no pending action. Accordingly, Defendant's motion to vacate the *lis pendens* is granted.

## H. Leave to Replead

Magistrate Boyle recommended granting Plaintiff leave to replead his Amended Complaint. The Second Circuit has counseled that leave to replead should be liberally granted *pro se* litigants. As Plaintiff is proceeding *pro se*, and because he asserts for the first time in his objections that the Kalinskys received a subsequent higher offer and willfully breached the contract by influencing the Board to reject his offer, the Court cannot conclude that no relief could be granted under any set of facts that could be proved consistent with these allegations. As such, with facts supporting these contentions, a state law cause of action sounding in breach of contract or fraudulent misrepresentation might be cognizable. Thus, leave to replead valid state law claims, in the appropriate forum, will be granted. However, Plaintiff is forewarned that this is not an opportunity to reiterate the claims contained in the Amended Complaint absent further proof in support thereof. Thus, absent a showing that Plaintiff was a member of a protected class, that Defendants knew Plaintiff was a member of a protected class and discriminated because of the protected factor, no federal jurisdiction will exist.

Finally, after reviewing all of Plaintiff's submissions including his cross-motion for summary judgment, the Court is not persuaded to modify Judge Boyle's R & R counseling dismissal of the complaint. To the extent Plaintiff's objections are not specifically addressed herein, the Court concludes that those objections are either without merit or incapable of comprehension, a problem which arises with unfortunate frequency when litigation is ventured *pro se*.

## CONCLUSION

For all the aforementioned reasons, the July 17, 1999 Report and Recommendation of United States Magistrate Judge E. Thomas Boyle is adopted in its entirety

and Plaintiff's objections thereto are denied in its entirety.

Accordingly, it is hereby Ordered that Defendants' motion to dismiss Plaintiff's complaint, or in the alternative for summary judgment, is granted in its entirety. Plaintiff's cross-motion for summary judgment is denied in its entirety. Plaintiff is granted leave to replead consistent with this Order. It is further Ordered that the Kalinskys' motion to vacate the *lis pendens* is granted and the Notice of Pendency filed with the Clerk of the County of Nassau on November 10, 1998, against "certain real property, stocks or shares house and premises known generally as 1 Toms Point Lane, known as: Building 5, Apartment 9H, section 4, block L, lot 774, 775," is hereby vacated. Because the Court has declined to exercise supplemental jurisdiction, Defendants' counterclaims are dismissed without prejudice.

SO ORDERED.

## REPORT AND RECOMMENDATION

BOYLE, United States Magistrate Judge.

Defendants, Lee and George Kalinsky (the "Kalinskys") move the Court for dismissal of the complaint of the plaintiff, Alfred Tufano, ("Tufano") for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). *Kalinskys' Notice of Motion*, filed December 16, 1998. Alternatively, the Kalinskys move for summary judgment pursuant to Federal Rule of Civil Procedure 56, and also request that the court order vacatur of the *lis pendens* filed by Tufano against the shares of their co-operative apartment, which is a subject of this action. *Id.* Defendants, One Toms Point Lane Corporation (the "Co-op") and Barbara Healy ("Healy") and a Mrs. Mac-Mann ("MacMann") (collectively the "TPL Defendants") move pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6), for dismissal of plaintiff's claim for failure to state a claim upon which relief can be granted. *TPL Defendant's Notice of Motion*, filed February 2, 1999.[1] Tufano opposes the motions and cross moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. *Tufano's Cross–Motion for Summary Judgment*, filed February 4, 1999. This matter was referred to me by Judge Seybert for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *Order of Hon. Joanna Seybert*, dated February 10, 1999.

### FACTS

Tufano brings this action *pro se* alleging: 1) that the defendants conspired to deprive him of his civil rights, in violation of 42 U.S.C. § 1985; 2) discrimination in housing, pursuant to the Fair Housing Act, codified at 42 U.S.C. § 3601 et seq.; and 3) a pendent state law claim for unfair competition under New York law. *Complaint*, ¶¶ 5–7, 12.

The gravamen of Tufano's complaint is that he was denied approval by the co-op board of directors when he sought to purchase the Kalinskys' co-operative apartment at One Tom's Point Lane, in Port Washington, New York. *Complaint*, ¶ 8. On October 29, 1998, Tufano attended a screening interview at the apartment of the defendant, Mrs. Barbara Healey ("Healy"), a member of the co-op's admissions committee. *Id.* Healey and another member of the committee, the defendant, Mrs. MacMann ("MacMann"), were present. *Id.* At that meeting, Tufano produced, as requested, a contract of sale for the Kalinskys' apartment, his prior two years tax returns, bank financial statements, and a judgment of divorce as it related to alimony. *Id.* Tufano was questioned by those present. *Id.* Tufano alleg-

---

1. A Notice of Voluntary Dismissal was filed as to the remaining Defendants, Douglas Elliman–Town and Country, listing agent, Dianne Levine, and the Long Island Saving Bank, F.S.B. on January 12, 1999, which was so ordered by Judge Seybert on January 22, 1999.

es that on November 5, 1998, the co-op board of directors met, and that the next day, their attorney contacted Tufano's real estate attorney informing him that Tufano had been "disapproved in his application for the purchase of stock and assignment of proprietary lease for apartment 9H at 1 Toms Point Lane Corporation." *Complaint,* ¶ 9. Tufano claims that the co-op board did not give a reason for his rejection. *Complaint,* ¶ 10.

In his complaint, Tufano alleges the co-op board "discriminate[d] blatantly and violate[d] a United States citizen's civil rights and liberty interests to buy and own property." *Complaint,* ¶ 6. Tufano also alleges that "plaintiff seeks damages against the defendants for committing acts arising under the provisions of the Constitution to protect against discrimination in housing. Defendants acting as an entity within a corporation, as a board of directors, having held meetings and communications did conspire to violate plaintiff's, Alfred Tufano's civil rights." *Complaint,* ¶.7. He states that "a conspiracy and fraud was formulated by the defendants which did indeed violate plaintiff's civil right's (sic)." *Complaint,* ¶ 11. He also alleges that "his federally guaranteed rights were violated and that defendants (sic) misconduct also constitutes unfair competition and practices under New York State Common Law." *Complaint,* 12. Tufano requests specific performance, i.e. sale of the apartment to him, or money damages of $84,000. *Complaint,* ¶ 14.

Nowhere in this complaint does Tufano allege the basis of the defendants' alleged civil rights violations against him. Likewise absent from his complaint is any allegation concerning any actionable conduct by the Kalinskys. Tufano has merely annexed to his amended complaint a copy of the contract of sale between himself and the Kalinskys. Tufano has also filed a *lis pendens* against the Kalinsky's shares in the apartment with the Clerk of the County of Nassau on November 10, 1998. *Kalinskys' Answer,* ¶ 16.

## DISCUSSION

■ The pleading of a *pro se* plaintiff should be read liberally and the court should interpret the complaint "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). This is particularly important when a *pro se* litigant alleges a civil rights violation. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

### A. The TPL Defendants

#### 1. *Rule 9(b)*

■ Federal Rule of Civil Procedure 9(b) states: "[i]n all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent knowledge, and other conditions of mind of a person may be averred generally," Fed.R.Civ.P. 9(b). Fraud allegations must be specific enough so that a defendant has "a reasonable opportunity to answer the complaint and must give the defendant adequate information to frame a response." *Qantel Corporation v. Niemuller,* 771 F.Supp. 1361, 1369 (S.D.N.Y.1991). Rule 9(b) requires that the complaint "allege the time, place, speaker and sometimes even the content of the alleged misrepresentation." *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993) (citations omitted); *see also DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) ("fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations.")

■ Rule 9(b) is not applicable to civil conspiracy claims, even conspiracy to defraud. *See Qantel,* 771 F.Supp. at 1371–72 (Rule 9(b) found not applicable to claim for conspiracy to defraud); *see also Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy.")

The TPL defendants claim that plaintiff has not alleged the fraud and conspiracy claims with sufficient particularity pursuant to Rule 9(b). Although Tufano alleges that "a conspiracy and fraud was formulated by the defendants which did indeed violate plaintiff's civil right's (sic)," nowhere in the complaint does he actually state a claim for fraud, whether it be under a federal statute or under New York law. Plaintiff merely uses the word fraud as an adjective to discuss his conspiracy claim pursuant to 42 U.S.C. § 1985. Because this civil conspiracy claim need not be pleaded with particularity, I recommend that the TPL defendants' motion to dismiss under Rule 9(b) be converted to a motion to dismiss under Rule 12(b)(6). *See Qantel,* 771 F.Supp. at 1371–72 (Rule 9(b) found not applicable to claim for conspiracy to defraud whereby court converted motion to dismiss under Rule 9(b) to motion to dismiss under Rule 12(b)(6)).

### 2. *Rule 12(b)(6)*

In a motion pursuant to Rule 12(b)(6), the Court must take "all well-plead[ed] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiffs." *Leeds v. Meltz,* 85 F.3d 51, 52 (2d Cir. 1996). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Id.* at 53.

### a) **Section 1985 of the Civil Rights Law**

Section 1985(3) provides in part that:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). It is well-settled that § 1985(3) provides a cause of action for private conspiracies. *See United Bhd. of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 832–33, 103 S.Ct. 3352, 3358–59, 77 L.Ed.2d 1049 (1983); *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). To sufficiently plead a § 1985(3) claim, a plaintiff must allege that defendants "(1) engaged in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or the equal privileges and immunities under the laws; (3) acted in furtherance of the conspiracy; and (4) deprived such person or class of persons the exercise of any right or privilege of a citizen of the United States." *New York State National Org. for Women v. Terry,* 886 F.2d 1339, 1358 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990) (citations omitted).

Moreover, a plaintiff must show that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993). The Supreme Court has held that discriminatory animus "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Woo v. City of New York,*

No. 93 Civ. 7007, 1996 WL 457337, at * 10 (S.D.N.Y. Sept.6, 1996) (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). Secondly,

> not all classes of persons fall within the protective ambit of § 1985(3). The Supreme Court has specifically left open the question of whether this statute was aimed against any other class-based animus than that directed against blacks and their supporters at the time of its enactment. Legislative history, the Supreme Court acknowledged, supported the view that § 1985(3) went beyond racially motivated conspiracies, but it held that animus based generally upon the economic views or commercial interests of a class were beyond the statute's scope.

*New York State National Org. for Women* 886 F.2d at 1358 (citations omitted) (extending 1985(3) to cover the class of women).

It is basic conspiracy law that a corporation cannot conspire with its agents or employees acting within the scope of their employment—or, more precisely, that since a corporation can only act through its agents, a claim that the agents collectively agreed to take some unlawful action in the name and on behalf of the corporation is simply another way of saying that the corporation acted unlawfully and therefore does not satisfy the basic requirements of a conspiracy. See *Girard v. 94th Street and Fifth Avenue Corp.*, 530 F.2d 66, 70 (2d Cir.1976) (dismissing on this basis a § 1985(3) claim alleging conspiracy to discriminate).

Finally, the statutory relief available under § 1985 "is limited to the recovery of damages." *Cuban v. Kapoor Bros. Inc.*, 653 F.Supp. 1025, 1033 (E.D.N.Y.1986) (citing *Mullarkey v. Borglum*, 323 F.Supp. 1218, 1228 (S.D.N.Y.1970)).

Plaintiff alleges that the TPL defendants engaged in a conspiracy to deprive him of his civil rights and liberty interests to buy and own property. The Court will construe the *pro se* plaintiff's complaint as alleging a violation of a constitutional right even though not every interest in property is protected by the constitution. See *O'Grady v. City of Montpelier*, 573 F.2d 747, 751 (2d Cir.1978) ("Obviously not every interference with a property right gives rise to a constitutional cause of action").

Even so, there are a number of reasons why this claim fails to state a cause of action under Fed.R.Civ.P. 12(b)(6). First, all the participants in the alleged conspiracy are members of the co-op's board of directors and were acting within their official capacity when they denied plaintiff's application. Even taking plaintiff's allegations of discrimination as true, because a corporation cannot conspire with itself, plaintiff has not made out a cause of action for conspiracy.

Second, plaintiff refers only to "a conspiracy and fraud ... formulated by the defendants which did indeed violate the plaintiff's civil right's (sic)," and that the co-op board held "meetings and communications." These general allegations, without any factual support, fail to satisfy the pleading requirements of a § 1985(3) claim. Moreover, plaintiff also fails to plead any act in furtherance of the alleged conspiracy, or any requisite invidious discrimination or racial animus. Particularly notable is the absence of an allegation that he is a member of a protected class. Plaintiff may not merely recite "conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights." *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir.1990); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.")

Based on the foregoing reasons, I recommend that the conspiracy claim be dismissed.

### b. The Fair Housing Act

Congress enacted the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 et seq., (1988) as Title VIII of the Civil Rights Act of 1968. This Act forbids discrimination in housing on the basis of race, color, religion, sex, familial status, or national origin and, most recently, handicap. 42 U.S.C. § 3604 (as amended 1988). The Second Circuit, in *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir.1979), set forth the factors that a plaintiff must establish to present a prima facie case of housing discrimination: 1) plaintiff is a member of a protected class; 2) he applied for and was qualified to rent or purchase the housing; 3) he was rejected; and 4) the housing opportunity remained available. *See Robinson*, 610 F.2d 1032, 1038 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).[2]

Tufano has failed to allege any of the above required elements except the third, that he was rejected by the co-op board. Tufano has not alleged facts sufficient to allege a claim under the FHA, and I recommend that this claim also be dismissed.

### B. The Kalinsky Defendants

Tufano has not alleged that the Kalinskys have violated § 1985 or the FHA. His allegations are limited to the co-op board and the two individual defendant members of the board, Healy and McMann. The Kalinskys are nowhere mentioned in the body of his complaint. The only part of the complaint referring to the Kalinskys, other than the caption, is the annexed copy of the contract of sale.

Even the most liberal construction of these pleadings does not support a state law breach of contract claim against the Kalinskys. Under the terms of the contract, the sale was subject to the approval of the co-op board of directors. *See Complaint* Exhibit A, ¶ 6.1. Tufano's failure to satisfy the condition precedent of co-op board approval precludes a finding that the Kalinskys breached the contract. *See Shandler v. Bauz*, 121 A.D.2d 619, 620, 503 N.Y.S.2d 648, 649 (2d Dep't 1986) (failure to obtain co-op board approval precluded finding of breach of contract against sellers). Accordingly, I recommend that the plaintiff has not stated a claim against the Kalinskys and the complaint should be dismissed as against them.

Moreover, I recommend that the *lis pendens* filed against the Kalinskys' shares in the apartment be vacated. Under New York law, a *lis pendens* may only be filed where "the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." N.Y.CPLR § 6501 (McKinney 1999). First, a notice of pendency cannot stand against shares in a cooperative apartment because these shares are "personal and not real property." *Savasta v. Duffy*, 257 A.D.2d 435, 683 N.Y.S.2d 511, 512 (1st Dep't 1999). Second, because a claim for breach of contract cannot lie, specific performance is not an available remedy.[3] Without a prayer for

**2.** The Second Circuit has not addressed whether the remedy of specific performance is available under a FHA claim. The Seventh Circuit, in *Moore v. Townsend*, 525 F.2d 482, 485 (7th Cir.1975), affirmed the judgment of the District Court for the Northern District of Illinois which ordered defendant-seller to specifically perform the sale of her house to plaintiffs, against whom the defendant had discriminated on the basis of race. Before trial, however, the plaintiffs had withdrawn their claim for money damages and specifically waived recovery thereon, leaving only the equitable issues to be tried. This is not the case here, wherein Tufano is seeking either damages or specific performance. Moreover,

the co-op board cannot be ordered to sell the subject shares to Tufano because it does not own them. *See R & R Homes v. Gellman*, 144 N.Y.S.2d 54, 55 Sup.Ct.Nass.Cty.1955) (specific performance may not be decreed against a corporation not a party to the contract).

**3.** Even if the § 1985 and FHA claims are read to include the Kalinskys, as already discussed, specific performance is not an available remedy under § 1985. *See Cuban v. Kapoor Bros. Inc.*, 653 F.Supp. 1025, 1033 (E.D.N.Y.1986) (The statutory relief available under § 1985 "is limited to the recovery of damages") (citations omitted). Moreover, although it might

specific performance the judgment demanded does not affect the title to, or the possession, use of enjoyment of the Kalinskys' co-op apartment. Therefore, I recommend that the Court grant the motion by the Kalinskys to vacate the *lis pendens* because this action does not affect title or possession of real property.

### C. The Unfair Competition Claim

A cause of action for unfair competition is available only in a business context. *See Findlay v. Findlay*, 18 N.Y.2d 12, 19–20, 271 N.Y.S.2d 652, 656, 218 N.E.2d 531 (1966) (A common law claim for unfair competition is based on the principles that "no man can sell his goods as those of another.... He may not through unfairness, artifice, misrepresentation or fraud, injure the business of another, or induce the public to believe his product is the product of that other.")

Tufano clearly has not alleged anything even remotely sounding in unfair competition. Moreover, because I recommend dismissal of the federal causes of action, I recommend that the court decline to exercise supplemental jurisdiction over this claim. *See* 28 U.S.C. § 1367(c)(3) (The district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *see also Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir.1998). Accordingly, I recommend that this claim also be dismissed.

### D. Tufano's Cross Motion for Summary Judgment

Because the Courts' present recommendation is that plaintiff's complaint be dismissed, this moots out plaintiff's cross-motion, and accordingly I have not addressed it. *See Independent Investor Protective League v. Securities and Exchange Commission*, 495 F.2d 311, 312 (2d Cir. 1974) (dismissing cross motion for summary judgment as moot in light of dismissal of complaint).

### RECOMMENDATION

The Court recommends that the plaintiff's complaint be dismissed in its entirely pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief can be granted, with leave to replead within 45 days. *See Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984) (Leave to amend should be freely given and a pro se litigant in particular "should be afforded every reasonable opportunity to demonstrate that he has a valid claim."); *see also Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991) ("Certainly the court should not dismiss without granting leave to amend at least once"). Tufano should not exercise this option to replead unless he is able to plead facts that will address the legal deficiencies in the present First Amended Complaint. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (Leave to replead should not be granted if there is an "apparent or declared reason—such as undue delay, bad faith or dilatory motive ...,  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.") (interpreting Fed. R.Civ.P. 15(a)). The Court further recommends that the Kalinskys' motion to vacate the *lis pendens* filed against their cooperative shares be granted.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of the date of this report. Failure to file objections within

---

be available under a FHA claim, as already discussed, a *lis pendens* cannot be filed

against the shares of a co-op.

the specified time waives the right to appeal the District Court's order. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Serv.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

The clerk is directed to provide a copy of this order to all parties.

July 17, 1999.